In the Matter of Stuyvesant Bank.

# UNITED STATES DISTRICT COURT.

IN THE MATTER OF STUYVESANT BANK, a bankrupt.

*Distribution of assets to creditors who are savings banks.*

Where savings banks make contracts with a banking institution for deposits, and the payment of interest on a portion of their cash capital stock, in pursuance of the laws of New York (1853 *and* 1858), and the banking institution becomes insolvent and goes into bankruptcy under the charge of an assignee in bankruptcy; upon a distribution of its assets, the claims to priorities or preferences by the savings banks under the state laws cannot be allowed as they are not liens or securities or rights or interests in property. If so they are not saved by the general scope of the bankruptcy act, and are not recognized by the twenty-eighth section.

*Southern District of New York, January, 1874.*

*T. Hughson,* for New York Savings Bank.

*D. Noble Rowan,* for Sixpenny Savings Bank.

*F. N. Bangs,* for assignee in bankruptcy.

BLATCHFORD, J. — The second section of the act of the legislature of the state of New York, passed April 15, 1853 (*Laws of* 1853, *chap.* 257), provides that it shall be lawful for any savings bank or institution for savings in the city and county of New York, then chartered, or that might be thereafter chartered, " to make temporary deposits in any bank or banking association to an amount equal to ten per cent of the actual cash capital stock paid in of such bank or banking association, and to receive interest thereon at such rates, not

exceeding that allowed by law, as may be agreed upon, provided that all the deposits in any one bank or banking association shall not exceed in amount twenty per cent of all the deposits belonging to such savings bank or institution for savings, and that no contract or agreement in relation to said deposits shall be for a longer period." The third section of said act provides that "it shall not be lawful for any such savings bank or institution for savings to make any loans to any bank or banking association exceeding the limits above prescribed, unless such savings bank or institution for savings shall require and receive of such bank for all sums so deposited exceeding the limits above prescribed such securities therefor and equal in amount as the comptroller or superintendent of the banking department is now lawfully authorized to receive in exchange for bills or notes for circulation." The fourth section of said act provides that "all the assets of any bank or banking association now or hereafter to be created, that shall become insolvent, shall, after providing for the payment of its circulating notes, be applied by the directors thereof, in the first place, to the payment of any deficiency that may arise on the sales of the securities aforesaid, and thereafter, of any sum or sums of money deposited with such bank or banking association by any savings bank or institution for savings, within the range of twenty per cent, as provided in the second section of this act." The first section of the act of the legislature of the state of New York, passed April 10, 1858 (*Laws of* 1858, *chap.* 136), provides that the temporary deposits which any savings bank or institution for savings in the city and county of New York, is authorized to make by the second section of chapter 257 of the Laws of 1853, shall not exceed in amount twenty per cent of all the deposits belonging to any such bank or institution for savings, nor shall the deposits of any such bank or institution for savings in any bank of issue exceed in the aggregate, at one time, the sum of $100,000.

The Sixpenny Savings Bank of the city of New York, a

savings bank in the city and county of New York chartered by the state of New York as a corporation, has proved against the estate of the bankrupt, a claim for the sum of $23,261.06, with interest thereon at the rate of five per cent per annum, from the 11th of October, 1871. In its proof of debt it claims that, under the said two acts, it has a valid and just lien on the estate of the bankrupt, and is, in the distribution and division of said estate, entitled to a preference or priority of payment to any creditor of the bankrupt, other than the New York Savings Bank, on the ground that the said moneys were deposited and loaned under the express agreement that the Sixpenny Savings Bank should be entitled to such priority under the said two acts, and that the said two acts entered into and formed a part of the contract under which said deposit or loan was made to the bankrupt.

The New York Savings Bank, a savings bank in the city and county of New York, chartered by the state of New York as a corporation, has proved against the estate of the bankrupt a claim for the sum of $20,020.41, with interest thereon, at the rate of seven per cent per annum, from the 12th of October, 1871. In proof of its debt, it claims that under the said two acts and its agreement with the bankrupt thereunder, and in pursuance thereof, prior to the insolvency of the bankrupt or any suspension thereof, it is entitled to have its said claim paid in full out of the assets of the bankrupt, before any payment is made to other creditors not entitled by law to a preference. Assuming that all or some parts of the amounts of these claims fall within the terms of the provisions of the state acts, the question arises whether the priority or preference claimed under the fourth section of the state act of 1853 can be allowed in the distribution of the assets of the bankrupt. It is contended, on the part of the savings banks, that, by virtue of the agreements made by them with the bankrupt, under and within the provisions of the state acts, they acquired a lien on all the assets of the bankrupt, in case of insolvency, and are, in the distribution

of the proceeds of its assets, entitled to the same preference and priority of payment over its general creditors to which they would have been entitled if its assets had been distributed under the state laws; that the provision of the fourth section of the state act of 1853 is not an insolvent law; that it contemplates a lien on the present and future assets of the bank; that all liens are made in contemplation of insolvency in the same sense as the lien created by the said fourth section; that the bankruptcy act preserves all liens, both legal and equitable, and all charges or incumbrances, and, except in cases of fraud on the act, gives to the assignee in bankruptcy only such rights and interests in the estate of the bankrupt as the bankrupt had or could assert, and that the rights acquired by the savings banks under the state act were rights of property, in the form of contracts, constituting equitable liens, which can be enforced against the estate of the bankrupt in the hands of the bankrupt, in case of insolvency, if there had been no proceedings in bankruptcy. I have given much consideration to the question involved, especially in view of the fact that, at a prior stage of these proceedings, I indicated an opinion in support of the claims of the savings banks, when the question was submitted to me on written briefs. But an oral reargument and a full consideration of the provisions of the bankruptcy act have led me to the conclusion that these claims cannot be allowed. I do not think that those claims can, under the terms of the state act, be properly considered as rights of property, inhering in or adhering to the property of the bankrupt. The savings banks, it is true, made contracts with the bankrupt, but these contracts were merely contracts for the making of deposits and the paying of interest thereon. No part of the state act gives any lien for such deposits on any assets of the bankrupt. Those assets, consisting in part of the moneys so deposited, could be dealt with and disposed of by the bankrupt, free from any lien, charge or incumbrance thereon arising out of such contracts. No provision of the state act

In the Matter of Stuyvesant Bank.

purports to interfere with the disposition of the assets of the bankrupt until insolvency occurs, and then a rule for the application of such assets, in the distribution of the estate of the bankrupt as the estate of an insolvent debtor, is created by the fourth section of the state act of 1853. But that rule establishes in favor of the savings banks no such interest in the property of the bankrupt that such property passes, under the bankruptcy act, into the hands of the assignee, subject to such interest. * * * The twenty-eighth section of the present act provides that certain claims shall "be entitled to priority or preference, and to be paid in full, in the following order." Then follow five clauses. The fifth is: "All debts due to any persons who, by the laws of the United States, are or may be entitled to a priority or preference, in like manner as if this act had not been passed." This is limited to priorities or preferences created by the laws of the United States. It does not extend to priorities or preferences created by the laws of a state. Under it, the state could have no priority for debts due to it which were not liens or securities; and but for the provision, in the third class of priorities, for such debts due to the state, there could be no priority for such debts. * * * But such priorities or preferences, created by state laws, in the distribution of insolvents' estates, are not liens or securities or rights or interests in property. If so, they are not saved by the general scope of the bankruptcy act, and they are not recognized by the twenty-eighth section. The claims to priority on the part of the savings banks must be disallowed.